Samuel SHIPKOVITZ, Plaintiff,

v.

**BOARD OF TRUSTEES OF THE UNIVERSITY OF the DISTRICT OF COLUMBIA, et al., Defendants.**

**Civil Action No. 91–00126.**

United States District Court,
District of Columbia.

Jan. 31, 1996.

**2**

Charles Bridges, first, Baltimore, MD, James Forrest King, Jr., Washington, DC, for plaintiff.

Charlotte Anne Bradley, Office of Corporation Counsel, D.C., Washington, DC, for The Government of the District of Columbia, a municipality, Sharon Pratt Dixon, Mayor, University of District of Columbia, Philip L. Brach, Alvin J. Darby.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter arises under Title VII. Plaintiff, a white, Jewish male, alleges that he was the victim of racial as well as religious discrimination by the University of the District of Columbia ("UDC").[1] Specifically, Plaintiff alleges that UDC hired a less qualified black, non-Jewish applicant to fill the position for which Plaintiff had also applied.

### BACKGROUND

This case was originally filed in January 1991. At that time, the Plaintiff was appearing *pro se*. The case was provisionally dismissed on August 24, 1992. On May 5, 1993, the dismissal was vacated by the District Court and the case was reinstated. On May 25, 1993, the case was reassigned to this Court. After pre-trial motions, discovery and numerous requests for continuance, a bench trial was begun in this matter on April 24, 1995. During the third day of trial, additional documentary evidence was produced for the first time by Defendants. This required an adjournment of the proceedings until all relevant material could be produced and examined by Plaintiff. The Court also allowed Plaintiff to take such additional discovery as was made necessary by the production of the new documents. On November 28, 1995, the case was reconvened and the trial was completed.

### FACTS

Plaintiff brought this lawsuit under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, alleging race and religious discrimination on the part of UDC, its Board of Directors, Dean Philip Brach, Dean of the College of Engineering, Physical Science and Technology and Professor Alvin Darby, Chairperson of the Department of Electrical Engineering and Computer Science.

In January 1986, Plaintiff applied for a position in the Department of Engineering at UDC. He was interviewed by both Dean Brach and Professor Darby. Plaintiff was also invited to give a guest lecture on a topic of his choosing. Although he was applying for a position as an engineering Professor, the Plaintiff prepared and gave a lecture on patent law for the electrical engineer. Plaintiff testified that while he was on the UDC campus for his interviews, he noticed that there were several public bulletin boards on which someone had posted material promoting the Palestinian Liberation Organization. Ultimately, UDC hired a black, non-Jewish male for the position.

### LEGAL STANDARD

■ In a Title VII action the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. If the plaintiff succeeds in proving a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered were not true reasons but were a pretext for discrimination. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981), *citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Hence, the first step in analyzing a plaintiff's discrimination claim begins with the evaluation of the plaintiff's prima facie case.

### *Prima Facie Case*

■ The elements which must be proven as part of a plaintiff's prima facie case depend on whether the case "involves a failure to hire, failure to promote, or retaliation."

---

[1] Plaintiff also brought a claim for age discrimination, but dropped it during the trial.

*Judge v. Marsh*, 649 F.Supp. 770, 779 (D.D.C.1986), *citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

■ To make out a case for discriminatory failure to hire as alleged in Plaintiff's complaint, the Plaintiff must show that "[he]" belongs to a protected group, that [he] was qualified for and applied for a position, that [he] was considered for and denied the position, and that another individual not a member of the protected class was hired at the time that Plaintiff was rejected. *See Bundy v. Jackson*, 641 F.2d 934, 951 (D.C.Cir.1981).

### Racial Discrimination Claim

The trial record is clear that Plaintiff applied for and was rejected for a position in the Department of Electrical engineering and that a non-Jewish, African–American was hired.

■ Plaintiff graduated from Carnegie–Mellon University with a Bachelor of Science Degree in electrical engineering. Between 1967 and 1973, Plaintiff earned both a Masters Degree and a Ph.D. in the same field. In 1979, Plaintiff also obtained a J.D. and became a practicing patent attorney. The evidence establishes that Plaintiff's most recent experience in the field of electrical engineering was related to his practice of patent law, rather than to either a teaching or an engineering position. Plaintiff offered the testimony of two expert witnesses, Dr. Harold Liebowitz and Dr. Zvi Meiksin to support his contention that he was qualified for the position. The experts testified that a legal practice in patent law required a current understanding of the theory of engineering.

Dean Brach and Professor Darby testified that teaching experience that was both recent and relevant to the field of electrical engineering was one of the major factors in evaluating candidates. It is clear from the record that Plaintiff's teaching experience in the area was, at best, limited and stale. At the time he applied for the position, Plaintiff's most recent teaching experience had been in 1977, in the Computer Science Department in the evening program of Cleveland State University for approximately two years. In addition, Dean Brach and Professor Darby testified that the lecture that Plaintiff prepared and delivered as part of the interview process was not appropriate or sufficiently related to the course material that Plaintiff would be teaching and that Plaintiff's teaching experience was too remote to qualify him for the position that he was seeking. The Court credits their testimony.

■ Even assuming that Plaintiff was qualified, he cannot succeed. Once the prima facie case has been established, the burden shifts to the Defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Texas Department of Community Affairs v. Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093. When the Defendant has articulated a legitimate, non-discriminatory reason, the burden then shifts back to the Plaintiff to show that the articulated reason is merely a pretext for race discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993).

Plaintiff contends that he was more qualified than the individual who was ultimately hired. Plaintiff's claim is based upon the fact that he held a Ph.D. and the other candidate did not. The individual who was hired held a Masters Degree in electrical engineering from Stanford University. At the time he was hired, he had recent practical and theoretical teaching experience in the field of electrical engineering. Defendants produced evidence supporting the position that a Masters Degree was a sufficient credential, especially when supported by recent and relevant teaching experience.

Again this Court credits the testimony of Professor Darby and Dean Brach. Both testified that they placed great emphasis on the teaching experience of the candidates. They also both confirmed that a Ph.D., while highly desirable, was not an absolute prerequisite for a teaching position. Given Defendants need to hire someone with recent and relevant teaching experience, Defendants have demonstrated a legitimate reason for their selection. Plaintiff has offered no evidence to demonstrate that this reason was pretextual.

### Religious Discrimination Claim

■ Plaintiff's claim of religious discrimination must fail as well. The evidence that

**4**

Plaintiff has presented on this issue is testimony that the bulletin boards in the Department of Engineering contained information promoting the Palestine Liberation Organization and "showing pictures meant to inflame passions against Jews." (Pl. Post–Trial Brief ¶ 4). Such material would obviously be offensive to Jews and may well foment a hostile environment. While it would seem that the leadership of the University could be more sensitive to the feelings of its Jewish employees, there is no evidence to relate the posting of the offensive material to Defendants' decision not to hire the Plaintiff.

### CONCLUSION

Plaintiff has failed in his burden of proof. Even if Plaintiff were qualified for the position for which he applied, Defendants have proven a legitimate, non-pretextual reason for hiring another applicant. The Court Clerk will therefore be instructed to enter a judgment in favor of the Defendants on all counts. This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law.

### ORDER

A trial having been held in this matter it is hereby

**ORDERED** that judgment in favor of the Defendants be entered on all counts.